UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

ELIKIM SHARAZOD SHABAZZ,
*et al.,*                                                    Case No. 1:14-cv-578

      Plaintiffs,

                                                              Beckwith, J.
      v.                                              Bowman, M.J.

XEROX, et al.,

      Defendants.

## REPORT AND RECOMMENDATION

### I. Introduction

This action is before the Court on the application to proceed *in forma pauperis* filed by four *pro se* Plaintiffs, in connection with a 127 page typed complaint alleging at least twenty-five claims against the following eight entity and individual Defendants: John Polk, Xerox Business Services, LLC, Xerox State & Local Solutions, Inc., State of Ohio Corporation EIN #311334820's Bank, Accumulator Agency Bank (for clearing house of child support processes (ABank)), State of Ohio Corporation EIN #311334820 (State#), Enlightened Inc., and Cynthia C. Dungey. (Doc. 4-2 at 1-2). Plaintiffs allege that their lawsuit is filed "pursuant to 42 U.S.C. §§1983, 1986 and 1988, the Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, Thirteenth and Fourteenth Amendment[s] to the United States Constitution," with jurisdiction "based upon 28 U.S.C. §§1331, 1338(a) and 1343." (*Id.* at ¶2).

By separate Order, Plaintiffs have been granted leave to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915. This matter is before the Court for a *sua sponte*

review of the complaint to determine whether the complaint, or any portion of it, should be dismissed because it is frivolous, malicious, fails to state a claim upon which relief may be granted or seeks monetary relief from a defendant who is immune from such relief.  *See* 28 U.S.C. § 1915(e)(2)(B); *see also Gibson v. R.G. Smith Co.*, 915 F.2d 260, 262 (6th Cir. 1990)(explaining procedure for screening *in forma pauperis* actions). Upon careful review, the undersigned finds that this action should be dismissed because Plaintiffs fail to state any claim upon which relief may be granted.

## II. Analysis

### A. General Standards Applicable to Complaints Filed *In Forma Pauperis*

28 U.S.C. § 1915 provides that a district court may authorize the commencement of a civil action without prepayment of fees provided the applicant submits an affidavit demonstrating that he or she "is unable to pay such fees or give security therefor." 28 U.S.C. § 1915(a)(1).  Under 28 U.S.C. § 1915(e)(2), the Court has the responsibility to screen all actions filed by plaintiffs including non-prisoners seeking *in forma pauperis* status and to dismiss any action or portion thereof which is frivolous or malicious, fails to state a claim for which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief.  *McGore v. Wrigglesworth,* 114 F.3d 601, 608 (6th Cir.1997), *overruled on other grounds by Jones v. Bock,* 549 U.S. 199, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007); *Johnson v. City of Wakefield,* 2012 WL 2337343 *1 (6th Cir. June 20, 2012); *Johns v. Maxey,* 2008 WL 4442467 *1 (E.D.Tenn. Sept.25, 2008) (Greer, J.).

In enacting the original *in forma pauperis* statute, Congress recognized that a "litigant whose filing fees and court costs are assumed by the public, unlike a paying

litigant, lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits." *Denton v. Hernandez,* 504 U.S. 25, 31 (1992) (quoting *Neitzke v. Williams,* 490 U.S. 319, 324 (1989)).  To prevent such abusive litigation, Congress has authorized federal courts to dismiss an *in forma pauperis* complaint if they are satisfied that the action is frivolous or malicious.  *Id.*; *see also* 28 U.S.C. §1915(e)(2)(B)(i).

Congress also has authorized the *sua sponte* dismissal of complaints that fail to state a claim upon which relief may be granted. 28 U.S.C. §§ 1915(e)(2)(B)(ii).  A complaint filed by a *pro se* plaintiff must be "liberally construed" and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus,* 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) (per curiam) (quoting *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)).  By the same token, however, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)); *see also Hill,* 630 F.3d at 470–71 ("dismissal standard articulated in *Iqbal* and *Twombly* governs dismissals for failure to state a claim" under §§ 1915A(b)(1) and 1915(e)(2) (B)(ii)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678 (citing *Twombly,* 550 U.S. at 556).  The court must accept all well-pleaded factual allegations as true, but need not "accept as true a legal conclusion couched as a factual allegation." *Twombly,* 550 U.S. at 555 (quoting *Papasan v. Allain,* 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986)).

Although a complaint need not contain "detailed factual allegations," it must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal,* 556 U.S. at 678 (citing *Twombly,* 550 U .S. at 555).  A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement."  *Id.* at 557.  The complaint must "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Erickson,* 551 U.S. at 93 (citations omitted).

Application of these general standards to Plaintiffs' complaint strongly favors dismissal of this case for failure to state a claim.

### B.  Failure to Comply with Rule 8

Rule 8(a) requires a plaintiff to file a complaint that sets forth "a short and plain statement of the claim...." Fed. R. Civ. P. 8(a)(2). In addition, Rule 8(d)(1) states that "[e]ach allegation must be simple, concise, and direct." Clearly, the 442–paragraph complaint in this case[1] cannot be considered a "short and plain statement of the claim." A total of 638 pages of exhibits are attached to the 127 page complaint, apart from Exhibit EE, a set of discs that were manually filed.  Many of the paragraphs contained within the complaint are legally unintelligible.  *See, e.g.*, "Upon information and belief, STATE# is a organization, organized and derived formally through the Northwest Ordinance acting as a form of Government." (Doc. 4-2 at ¶34).  Among other defects, a large number of the paragraphs refer to "Defendants" collectively, leaving the

---

[1]The complaint actually consists of 442 paragraphs in just the first 122 pages.  The remaining pages include an additional 15 lettered paragraphs that purport to state a "prayer for relief," concluding with an additional "jury demand" and 10 additional numbered paragraphs described as Plaintiffs' "Statement Upon Which Relief Can Be Granted" - essentially a settlement proposal.

Defendants uninformed as to which among them is being accused of what wrongdoing. While any number of paragraphs could illustrate these difficulties, paragraph 26 provides a typical example:

> Among other things, Plaintiffs have an interest in the contract arrangement of Defendants in several ways, more importantly, because the contract calls for and uses technology that forces the Plaintiffs into activity not disclosed to the Plaintiff and involving the transferring of the private personal information and data identifiers of the Plaintiffs and the Plaintiffs['] children to an unstable, illegitimate, international partner in Xerox, who does not hold the child support patented methods and technology legally, in addition to the inherent danger Plaintiffs face through the patent, technology and contract arrangement of the Defendants, because they utilize negotiable instruments and the remedy held at the federal reserve and Depository Trust Corporation, and blocks the Plaintiffs from utilizing the remedy provided for him by U.S. Congress in 1933.

(Doc. 4-2 at 11, ¶26).

When a pleading is so verbose as to be indecipherable, the complaint may be dismissed for failure to comply with the Federal Rules of Civil Procedure. *See Plymale v. Freeman,* No. 90–2202, 1991 WL 54882 (6th Cir. Apr.12, 1991) (affirming dismissal with prejudice of 119 page complaint with twenty-four counts for failure to comply with Rule 8)*; Flayter v. Wisconsin Dep't of Corr.,* 16 Fed. Appx. 507, 509 (7th Cir. 2001)(116–page 242–paragraph prisoner civil rights complaint "would, because of its length and level of detail, present a challenge to the defendants in filing a responsive pleading" and was a violation of Rule 8(a)(2)); *McHenry v. Renne,* 84 F.3d 1172, 1180 (9th Cir.1996) ("Something labeled a complaint but written more as a press release, prolix in evidentiary detail, yet without simplicity, conciseness and clarity as to whom plaintiffs are suing for what wrongs, fails to perform the essential functions of a complaint."). These cases teach that complaints such as this one merit dismissal.

Accordingly, I first recommend dismissal for failure to state a claim under Rule 8 of the Federal Rules of Civil Procedure.  *See also Graley-Brumlow v. Brumlow*, 2008 WL 5521282 (S.D. Ohio, Jan. 20, 2009); *cf. Banks v. Doe*, 523 Fed. Appx. 503, 2013 WL 3822132 (10th Cir. July 25, 2013) (affirming *sua sponte* dismissal of action for non-compliance with Rule 8 in case where the amended complaint expanded from 28 pages to 91 pages with over 30 defendants, and was based on "numerous instances of allegedly illegal and unconstitutional treatment [from May 2009 through December 2012] while [the plaintiff] was housed in different detention facilities"); *Binsack v. Lackawanna Cnty. Prison*, 438 Fed. Appx. 158 (3rd Cir. 2011) (*per curiam*) (affirming dismissal of a complaint that was "so excessively voluminous and unfocused as to be unintelligible" for failure to comply with Rule 8).

### C.  Alternative Grounds for Dismissal

Aside from Plaintiffs' failure to comply with Rule 8, numerous additional bases warrant the dismissal of the instant complaint for failure to state a claim.  These additional grounds are set forth in part to illustrate the futility of any proposed amendment to Plaintiffs' complaint.

#### 1.  Description of Twenty-five Numbered Claims

The complaint purports to set forth the following identified counts or claims:  (1) Violations of 42 U.S.C. 1983, 1985 and U.S. Constitution by Defendants Polk, Xerox, EnLi, and Defendant Dungey through inherently dangerous devices and methods; (2) Arbitrary Discrimination; Xerox is not unfamiliar with commercial paper or a citizen extending his credit – with simple signature; (3) 42 U.S.C. §§1983 and 1985 against Defendant John Polk and Cynthia C. Dungey; (4) 42 U.S.C. §§1983 and 1985 against

Defendant Cynthia C. Dungey; (5) 42 U.S.C. 1983 and 1985 against STATE#'s Bank Enforced and Coerced Customership; (6) 42 U.S.C. 1983 and 1985 against Accumulator Agency Bank; (7) Pursuant to Declaratory Judgment act and U.S. Constitution by Defendants John Polk, Xerox and State of Ohio Corporation EIN#31134820.

In addition to the aforementioned claims, Plaintiffs include at least 18 additional claims, most of which are untitled.  Count 8 is described as a "case or controversy" between Plaintiffs and all Defendants under the Declaratory Judgment Act "concerning the schemes and conspiracy implemented by enforcing a technology within the child support statutes that is not written or disclosed within the statutes, and does not give legal remedy according to the statutes and does not make full disclosure that the child support process is a commercial process."   (Doc. 4-2 at ¶¶207-208).   Count 9 presumably is explained somewhere between paragraphs 209 and 354.   While the undersigned cannot ascertain any precise description of that claim, bolded captions include the following:  "Child Support statutes of STATE# invoke void for Vagueness Doctrine," "Defining of the Payment Coupon," "Plaintiffs['] further claims," "Void for Vagueness Doctrine of child support statutes and methods and False Acts of Contempt," "State# Monetary Beneficial Interest in the Xerox Patents," "Privatization of Ohio Child Support," "Fraudulent and Unauthorized Endorsements," "Acceptance of the Oath of the President of the United States, History and Defining of the Payment Coupon," and "Balancing of the Remaining Factors."

Count 10 alleges that child support cases were wrongfully brought against Plaintiff David McCoy in state court, because Plaintiff McCoy never signed a birth

certificate. (Doc. 4-2 at ¶¶355-362). Count 11 alleges that Plaintiff Elikim Shabazz was wrongfully charged with a failure to pay child support in 2001 and/or was discriminated against during child support proceedings in 2001. (*Id.* at ¶¶363-374). Count 12 alleges that a "cases or controversy exists…concerning the legal standing of Xerox to partner with the State of Ohio Corporation EIN #311334820" that entitles Plaintiffs to "a declaratory judgment that the child support processing contract between Xerox and [the State] is invalid because the child support Patents proposed in the contract is [sic] fraudulent and invalid." (*Id.* at ¶¶375-378). Count 13 is entitled "Discharge by Operation of Law." Count 14 alleges that Plaintiffs "are entitled to declaratory judgment that they have a right to all income, profits or funds made on each Payment Coupon and addenda file for every child support account tied to the Plaintiffs and their children." (*Id.* at ¶396). Count 15 concerns Plaintiffs' objections to the child support process and methods "implemented by the Defendants" and seeks "a declaratory judgment that [Plaintiffs] are entitled to know the activity of that portion of the child support system that uses their social security number[s] and the social security number[s] of their children, as a instrumentality to the system." (*Id.* at ¶¶397-400).

Count 16 seeks a declaratory judgment that Plaintiffs "are involved in a commercial transaction and/or a securities transaction when interacting with State of Ohio Corporation EIN#311334820's child support platform and program." (*Id.* at ¶405). Count 17 is entitled "Declaratory Judgment of Discharge by Operation of Law." Count 18 seeks a declaratory judgment that Plaintiffs "are entitled to extend the credit of the United States citizen[s] they represent to discharge all public debt including all child support debt placed upon the U.S. citizen[s] they represent." (*Id.* at ¶414). Count 19

seeks a declaratory judgment "that child support debt obligations should either be reduced based on a daily rate of incarceration or brought to zero so that the obligor has a significant lesser amount or no amount owed on a child support debt obligation upon release."  (*Id.* at ¶418).

Count 20 seeks a declaratory judgment "that the funds derived or garnered through Obligor's incarceration or any funds profited from said incarceration by the County or State, should be sent to the parent's children thereby allowing the children to benefit from the non-custodial parents' incarceration and any contempt procedure."  (*Id.* at ¶422).  Count 21 seeks a declaratory judgment "that the position of the STATE# that extends to the Obligor and Obligee, is one of trustee and not beneficiary."  (*Id.* at ¶426).  Count 22 seeks a declaratory judgment "that because [Plaintiffs] have each been incarcerated on child support charges that they have sustained damages as a consequence of said periods of incarceration."  (*Id.* at ¶430).  Count 23 seeks a declaratory judgment "that child support contempt procedures…are civil matters and thus, the procedural structure of it cannot e changed in order to justify and imitate a criminal proceeding."  (*Id.* at ¶434).  Count 24 asserts entitlement to a declaratory judgment "that the Defendants cannot put in place mechanisms that aid in the rehypothecation [sic] of a portion of the public debt belonging to the citizens represented here by the Plaintiffs, due to that portion of the public debt, (i.e. income, benefits, etc.) already being hypothecated in 1933 by the United States."  (*Id.* at ¶438).  Count 25 asserts that "Plaintiffs are entitled to a declaratory judgment that any and all commercial child support contracts operated and administered among Defendants showing imposed

signatures of Plaintiffs are invalid because Plaintiffs were not a willing and knowing party to the transaction." (*Id.* at ¶442).

### 2. Lack of Jurisdiction

"Federal Courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994). Generally, federal courts have jurisdiction only over civil actions "arising under the Constitution, laws, or treaties of the United States," pursuant to 28 U.S.C. §1331," or when the matter in controversy is between citizens of different states and the amount in controversy exceeds $75,000, pursuant to 28 U.S.C. §1332. The former is commonly referred to as "federal question jurisdiction," while the latter is referred to as "diversity jurisdiction."

As best the undersigned can ascertain, all four Plaintiffs allege that they previously have been prosecuted for non-payment of child support. (Doc. 4-2 at ¶246, 276). All four contend that they received "Payment Coupons" and returned those payment coupons, anticipating (apparently) that the State of Ohio would honor those payment coupons as some form of legal payment. (*See* Doc. 4-2 at ¶¶15, 226-234, 237-251, 391 ("tender of the Payment Coupon discharges the obligation of the debt…."); *see also* ¶254, "Plaintiffs took it upon themselves to study the history of the Payment Coupon and the statutes of the State# that would bring understanding to this form of payment and why it was being sent to Plaintiffs."). The undersigned infers that Plaintiffs are alleging that the State refused to credit their accounts in the absence of receipt of income, cash, or benefits. (*Id.* at ¶225). Plaintiffs claim a "conspiracy" that has led to "the unreasonable seizure of Plaintiffs['] bodies, children, and theft of property, including livelihood, resulting in imprisonment, impoverishment, and the

10

circumventing of" various constitutional rights. (*Id.* at ¶4). Plaintiffs assert that they have filed "this action to seek a declaration of debt satisfaction and invalidity of further collection on same accounts of alleged child support, as they are based on inherently dangerous U.S. Patents." (*Id.* at ¶12).

To the extent that Plaintiffs' complaint seeks to challenge Ohio's child support system, Plaintiff's complaint pertains primarily to domestic relations issues, which are within the exclusive jurisdiction of the states and fall outside the scope of federal jurisdiction. In general, Ohio juvenile courts retain exclusive jurisdiction over matters involving child custody and support. More than a century ago, the United States Supreme Court proclaimed that "[t]he whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the states and not to the laws of the United States." *In re Burrus,* 136 U.S. 586 (1890). Thus, under the *Burrus* abstention doctrine, federal courts have universally declined to exercise jurisdiction in domestic relations cases in which a complaint contains only conclusory assertions that a plaintiff is entitled to relief because of the state's constitutional violations, where those assertions are "a mere pretense and the suit is actually concerned with domestic relations issues." *Danforth v. Celebrezze,* 76 Fed. Appx. 615, 616 (6th Cir. 2002).

Although it is possible for federal jurisdiction to attach where a litigant presents an *independent* claim that challenges the constitutionality of a state official's action, *see Pittman v. Cuyahoga County Dep't of Children and Family Servs.,* 241 Fed. Appx. 285, 287–290 (6th Cir. 2007), multiple reasons counsel against the assumption of federal jurisdiction in this case. Numerous deficiencies in Plaintiffs' complaint, as discussed below, present an insurmountable barrier to jurisdiction. When similar claims have been

presented, other federal courts have declined to exercise jurisdiction. *See, e.g., Aitken v. Child Support Enforcement Agency,* 2007 WL 963278 (N.D. Ohio, March 28, 2007) (dismissing under 28 U.S.C. § 1915(e) plaintiff's due process claim based upon allegation that CSEA improperly awarded child support in his absence, when he could not attend hearing).

In short, this Court lacks subject matter jurisdiction over many of Plaintiffs' claims because to the extent any claims are stated, they fall exclusively within the jurisdiction of the state courts. Plaintiffs' conclusory references to violations of their civil rights are not sufficient—even if they did not merit dismissal under Fed. R. Civ. P. 12(b)(6)—to grant federal jurisdiction. This Court cannot grant the relief Plaintiffs seek—alteration of the state court's child support award. *See Robinson v. State of Michigan*, 2009 WL 2567171 (W.D. Mich., Aug. 4, 2009)(dismissing suit that was essentially a challenge to child support and custody orders and other related state court decisions); *see also generally Elk Grove United School Dist. v. Newdow,* 542 U.S. 1 (2004) (Despite "rare instances in which it is necessary to answer a substantial federal question that transcends or exists apart from the family law issue, ... in general it is appropriate for the federal courts to leave delicate issues of domestic relations to the state courts."); *Ankenbrandt v. Richards,* 504 U.S. 689 (1992) (narrowing the domestic relations exception, but affirming its continuing viability). Therefore, Plaintiffs' claims challenging their child support debts should be dismissed for lack of subject matter jurisdiction. *Wilder v. Swann,* 2011 WL 4860041 *4 (E.D.Tenn. Oct.13, 2011) (dismissing *pro se* plaintiff's civil rights case for lack of subject matter jurisdiction, where it was clear that claims arose solely out of divorce and custody proceedings); *McGhan v. Kalkaska*

*County Dep't of Human Servs.,* 2009 WL 2170151 *9 (W.D.Mich. July 20, 2009) ("the court lacks jurisdiction over any claim by plaintiff that she suffered injuries resulting from the decisions made by Michigan's courts in child custody proceedings.").

In addition to a general reliance upon federal question jurisdiction under §1331, Plaintiffs claim jurisdiction under 28 U.S.C. §1338(a), which provides for federal question jurisdiction when a case "arises under" any federal patent statute. However, the basis for the "patent" jurisdiction is no more than smoke and mirrors. A portion of Plaintiffs' complaint appears to seek invalidation of several patents. However, Plaintiffs themselves are not competitors of the patent holders and claim no particular interest in the patents allegedly held by the Xerox Defendant(s). Instead, Plaintiffs appear to be claiming that they have been adversely affected by alleged flaws in Ohio's child support system. Plaintiffs reason that Ohio's child support system is either supported or administered by contracts with Ohio held by one or both Xerox Defendants, which contracts were allegedly based upon the challenged patents. This Court lacks jurisdiction to consider Plaintiffs' challenge to the patents in question.

> "Federal Circuit law governs [the determination] as to whether an actual controversy exists under the Declaratory Judgment Act when the underlying merits of an action involve patent infringement or validity." *Microchip Tech. Inc. v. Chamberlain Group, Inc.,* 441 F.3d 936, 940 (Fed.Cir.2006). The Federal Circuit has "articulated a two-part test to determine whether an 'actual controversy' exists in actions involving a claim for a declaration of patent invalidity or noninfringement." *Id.* at 942. A plaintiff seeking declaratory invalidation of a patent "must establish both (1) a reasonable apprehension that it will face a patent infringement suit if it commences or continues the activity at issue, and (2) present activity by the declaratory plaintiff that could constitute infringement, or concrete steps taken by the plaintiff with the intent to conduct such activity." *Id.* The reasoning for this test is that "the purpose of the Declaratory Judgment Act was to enable a person who is at legal risk because of an unresolved dispute to obtain judicial resolution of that dispute without having to await

the commencement of a legal action by the patentee; to 'clear the air." ' *Id.*
at 943.

*Maxwell v. Stanley Works*, 3:06-0201, 2006 WL 1967012 (M.D. Tenn. July 11, 2006)
*aff'd sub nom. Maxwell v. Stanley Works, Inc.*, 262 Fed. Appx. 267 (Fed. Cir. 2008).

As a final basis for jurisdiction, Plaintiffs rely upon 28 U.S.C. §1343, which – like
the patent statute - provides for redress of statutory civil rights violations under this
Court's "federal question" jurisdiction. However, much like Plaintiffs' convoluted patent
claims, their allegations fail to state any cognizable civil rights claims. The Supreme
Court has rejected the proposition that §1343(a)(4) "encompass[es] all federal statutory
suits." *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 618 (1979). Construed
liberally, Plaintiffs' complaint largely fails to allege that Defendants were motivated by
racial or other class-based discriminatory animus.

The lone exception is in paragraph 276, in which Plaintiffs allege that they are
"men who make up a significant majority of the people who are arrested, and because
Plaintiffs have been arrested several times on this issue, Plaintiffs have been gender
profiled through a gender biased system, causing a gender biased discrimination hate
crime in that it violates the Thirteenth and Equal Protection Clause of the Fourteenth
Amendments as well as violating the Sixth Amendment…." (Doc. 4-2 at ¶276).
However, the Sixth Circuit has clearly rejected such claims involving the alleged
disparate impact of Ohio's child support laws. *See Agg v. Flanagan*, 855 F.2d 336 (6th
Cir. 1988)(rejecting equal protection challenge to child support procedures, and
rejecting conspiracy theories as "so far from being based on plausible legal theory that
former husband would be ordered to pay attorney fees.").

### 3. Eleventh Amendment Immunity

Plaintiffs have not stated viable § 1983 claims against any of the state entities. The Eleventh Amendment prohibits a citizen of a state from suing that state or one of its agencies in federal court unless the state consents to such suit or there is an express statutory waiver of immunity. *Hans v. Louisiana,* 134 U.S. 1 (1890). The State of Ohio has not constitutionally nor statutorily waived its Eleventh Amendment immunity in the federal courts, *see Johns v. Supreme Court of Ohio,* 753 F.2d 524 (6th Cir.1985); *State of Ohio v. Madeline Marie Nursing Homes,* 694 F.2d 499 (6th Cir.1982); *Latham v. Office of Atty. Gen. of State of Ohio,* 395 F.3d 261, 270 (6th Cir.2005), and Congress did not "explicitly and by clear language" express its intent to "abrogate the Eleventh Amendment immunity of the States" in enacting Section 1983. *See Quern v. Jordan,* 440 U.S. 332, 341-43 (1979). In addition, "[a] state court is not a "person" for the purposes of 42 U.S.C. § 1983 and hence is not subject to lawsuit under that statute." *Mumford v. Basinski,* 105 F.3d 264, 267 (6th Cir.1997). To the extent that the banks or other institutional Defendants are identified by Plaintiffs as some form of state-controlled entities, Plaintiffs' suit seeking monetary damages against them is barred by the Eleventh Amendment. *See Cady v. Arenac County,* 574 F.3d 334, 352 (6th Cir. 2009) (Eleventh Amendment immunity bars § 1983 suits against a state, its agencies, and its officials sued in their official capacities).

### 4. Color of State Law

To the extent that Plaintiffs allege that the private (non-state) Defendants have operated under "color of state law," their conclusory allegation – devoid of supporting facts - is insufficient to state any viable claim.

### 5. *Heck v. Humphrey* Exception

To the extent that Plaintiffs seeks to challenge any prior criminal convictions for non-payment of child support, they fail to state any claim that would be cognizable under 42 U.S.C. §1983. *See Heck v. Humphrey,* 512 U.S. 477, 486-87, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994). In *Heck,* the Supreme Court held that a § 1983 civil rights action seeking money damages on the basis of an allegedly unconstitutional conviction or sentence will not lie unless the plaintiff has already succeeded in having the conviction or sentence invalidated. When a successful § 1983 damages action would necessarily imply that a prior sentence or conviction was invalid, the complaint must be dismissed unless the plaintiff can demonstrate that his conviction or sentence has been reversed on appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determinations or called into question by the issuance of a writ of habeas corpus. *Id. See also Robinson v. State of Michigan*, 2009 WL 2567171 at *8 (holding that *Heck* bars both review of prior conviction for failure to pay child support and underlying challenge to continue to pay such support filed pursuant to §1983). At the very least, Plaintiffs may not use the instant lawsuit to challenge their prior convictions for nonpayment of child support. *But see Wallace v. Kato*, 127 S. Ct. 1091 (2007)(rejecting notion that *Heck* also prohibits a civil action that would impugn an anticipated future criminal conviction).

### 6. Void for Vagueness

Several of Plaintiffs' claims appear to allege that certain orders and/or laws are "void for vagueness." "Void for vagueness simply means that criminal responsibility should not attach where one could not reasonably understand that his contemplated

conduct is proscribed." *United States v. Nat'l Dairy Prods. Corp.*, 372 U.S. 29, 32-33 (1963).  To the extent that Plaintiffs' claims are not barred by the doctrine of *Heck v. Humphrey*, they are frivolous.  *See generally, United States v. Nichols*, 928 F. Supp. 302 (S.D. N.Y. 1996)(rejecting claim that national child support laws are void for vagueness); *United States v. Brand*, 163 F.3d 1268, 1270 at n.8 (11th Cir. 1998)(rejecting claim that state order requiring payment of child support was void for vagueness).

### III. Conclusion and Recommendation

On occasion, a court may offer a *pro se* plaintiff who fails to comply with Rule 8 the opportunity to resubmit an amended complaint, subject to page and other appropriate limitations designed to bring a complaint into compliance with the requirement that it present a "short and plain statement" of claims for relief.  However, as should be clear from the above discussion, the instant case merits dismissal not only based upon Plaintiffs' present failure to comply with Rule 8 and failure to state any claim, but because Plaintiffs cannot state any plausible claim over which this Court would have jurisdiction.  The undersigned has already expended ample of its scarce judicial resources scrutinizing the complaint that was filed.   Under the circumstances, this Court is divested of jurisdiction and need not permit a futile amendment.  *See Apple v. Glenn*, 183 F.3d 477, 478-479 (6th Cir. 1999)(*per curiam*); *In re Prison Litigation Reform Act*, 105 F.3d 1131 (6th Cir. 1997); *accord Thomas v. Pleasant*, 28 Fed. Appx. 436 (6th Cir. Jan. 24, 2002).

### III. Conclusion and Recommendation

For the reasons explained above, **IT IS RECOMMENDED THAT** all of Plaintiffs'
claims against all named Defendants be DISMISSED with prejudice for failure to comply
with Rule 8 and for failure to state a claim, and that this case be CLOSED.


 *s/ Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

ELIKIM SHARAZOD SHABAZZ,
*et al.,*                                                    Case No. 1:14-cv-578

       Plaintiffs,

                                      Beckwith, J.
       v.                                              Bowman, M.J.

XEROX, et al.,

       Defendants.

**NOTICE**

     Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R.  That period may be extended further by the Court on timely motion by either side for an extension of time.  All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections.  A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

19